## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA KAI MILLER,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:22-cv-1259** |
| | § | |
| **JOSHUA WISKEMAN, SEAN KELLY** | § | **United States Magistrate Judge** |
| **AND JAKE GOGA,** | § | **Cynthia Reed Eddy** |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Joshua Kai Miller, Plaintiff complaining of Joshua Wiskeman, Sean Kelly, and Jake Goga, and for causes of action will respectfully show unto the Court as follows:

## SUMMARY

On May 12, 2022, Pennsylvania State Troopers Joshua Wiskeman, Sean Kelly, and Jake Goga, stormed into the residence of Joshua Miller's friend Cory Vogel without identifying themselves as law enforcement officers. Defendant Wiskeman tackled Plaintiff Joshua Miller onto a bedroom floor and handcuffed him even though Mr. Miller had not committed a crime, was not resisting, was not fleeing, and simply had opened the bedroom door to investigate after hearing a loud commotion and his friend Mr. Vogel screaming. Defendants Kelly and Goga repeatedly stomped on Mr. Miller when he was defenseless, restrained, and subdued in handcuffs in a defenseless position on the ground. Defendant Wiskeman continued the brutal assault on Mr. Miller by punching him in the head, leg sweeping him, and slamming him up against a patrol vehicle when Mr. Miller still had not committed a crime, was not resisting, and was not fleeing. This force used against Mr. Miller was unnecessary and unreasonable as it was clearly excessive to the need. Mr. Miller now files this lawsuit for violation of his right to be free from excessive force under the Fourth Amendment to the United States Constitution.

## I.
## PARTIES

1.      Plaintiff Joshua Miller is an individual residing in Westmoreland County, Pennsylvania.

2.      At all times relevant to this lawsuit Defendant Joshua Wiskeman was employed as a State Trooper at the Pennsylvania State Police located at 3218 Rickert Road, Perkasie Pennsylvania, 18944 Defendant Wiskeman may be served at his place of employment or wherever he may be found. Defendant Wiskeman is being sued in his individual capacity.

3.      At all times relevant to this lawsuit Defendant Sean Kelly was employed as a State Trooper at the Pennsylvania State Police located at 3218 Rickert Road, Perkasie Pennsylvania,

18944.  Defendant Kelly may be served at his place of employment or wherever he may be found. Defendant Kelly is being sued in his individual capacity.

4.       At all times relevant to this lawsuit Defendant Jake Goga was employed as a State Trooper at the Pennsylvania State Police located at 3218 Rickert Road, Perkasie Pennsylvania, 18944. Defendant Goga may be served at his place of employment or wherever he may be found. Defendant Goga is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

5.       The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

6.       Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because all of the causes of action accrued in the Western District of Pennsylvania.

## III.
## FACTS AND ALLEGATIONS

7.       At all times relevant to this lawsuit, Defendants Joshua Wiskeman, Sean Kelly, and Jake Goga were employed as state troopers with the Pennsylvania State Police.

### USE OF FORCE AGAINST MR. MILLER

8.       On May 12, 2022, Plaintiff Joshua Miller was staying at his friend Cory Vogel's residence in Westmoreland County, Pennsylvania.

9.       Mr. Miller was lying down in a guest bedroom.

10.      Mr. Miller heard dogs barking, a loud crash, and then screaming from inside of the residence.

11.      Mr. Miller grew concerned that someone was robbing Mr. Vogel's home as he did not hear anyone identifying themselves and heard Mr. Vogel screaming.

12.     Frightened, Mr. Miller got up to see what was going on and began to open the bedroom door.

13.     Defendant Wiskeman, Defendant Kelly, and Defendant Goga burst through the bedroom door.

14.     Without warning or explanation, Defendant Wiskeman tackled Mr. Miller onto the ground, placed his hands behind his back, and handcuffed him.

15.     At no point prior to Defendant Wiskeman tackling Mr. Miller onto the floor did Mr. Miller attempt to flee or take steps away from Defendant Wiskeman, Defendant Kelly, or Defendant Goga, as he was in the process of opening the bedroom door to investigate what was going on as he heard his friend Mr. Vogel screaming, a loud crash, and dogs barking.

16.     At no point prior to Defendant Wiskeman tackling Mr. Miller onto the floor did Mr. Miller resist Defendant Wiskeman, Defendant Kelly, or Defendant Goga as he was simply in the process of opening the bedroom door to investigate what was going on as he heard his friend Mr. Vogel screaming, a loud crash, and dogs barking.

17.     At no point did Mr. Miller posture his body in a threatening manner as he was simply opening the bedroom door to investigate the commotion in the residence.

18.     At no point did Mr. Miller strike Defendant Wiskeman, Defendant Kelly or Defendant Goga or any other person in any way.

19.     Mr. Miller remained on the ground after Defendant Wiskeman handcuffed him and tackled him on the floor.

20.     After Mr. Miller was handcuffed on the ground, Defendant Wiskeman then began to yell "stop resisting."

21.     Defendant Wiskeman began to punch Mr. Miller in the head.

22.     Mr. Miller screamed, "I am not resisting. I'm handcuffed."

23.     At no point prior to Defendant Wiskeman punching Mr. Miller in the head did Mr. Miller attempt to flee or take steps away from Defendant Wiskeman, Defendant Kelly, or Defendant Goga, as he was handcuffed in a defenseless position on the ground when Defendant Wiskeman began punching him.

24.     At no point prior to Defendant Wiskeman punching Mr. Miller in the head did Mr. Miller resist Defendant Wiskeman, Defendant Kelly, or Defendant Goga, as he was handcuffed in a defenseless position on the ground when Defendant Wiskeman began punching him.

25.     At no point did Mr. Miller posture his body in a threatening manner as he was handcuffed on the ground.

26.     At no point did Mr. Miller strike Defendant Wiskeman, Defendant Kelly or Defendant Goga or any other person in any way.

27.     Defendant Kelly and Defendant Goga began to stomp on Mr. Miller repeatedly.

28.     At no point prior to Defendant Goga and Defendant Kelly stomping Mr. Miller did Miller attempt to flee or take steps away from Defendant Wiskeman, Defendant Kelly, or Defendant Goga, as he was handcuffed in a defenseless position on the ground when Defendant Goga and Defendant Kelly stomped on him.

29.     At no point prior to Defendant Goga and Defendant Kelly stomping Mr. Miller did Miller resist Defendant Wiskeman, Defendant Kelly, or Defendant Goga, as he was handcuffed in a defenseless position on the ground when Defendant Goga and Defendant Kelly stomped on him.

30.     At no point did Mr. Miller posture his body in a threatening manner as he was handcuffed on the ground.

31.     At no point did Mr. Miller strike Defendant Wiskeman, Defendant Kelly or Defendant Goga or any other person in any way.

32.     Defendant Wiskeman continued the brutal assault by picking Mr. Miller up from the ground and dragging him out of the bedroom into the kitchen area.

33.     After Mr. Miller was brought to his feet, Defendant Wiskeman swept Mr. Miller's legs out from under him causing him to fall on the kitchen floor.

34.     At no point prior to Defendant Wiskeman sweeping Mr. Miller's legs from beneath him did Mr. Miller attempt to flee or take steps away from Defendant Wiskeman.

35.     At no point prior to Defendant Wiskeman sweeping Mr. Miller's legs from beneath him did Miller resist Defendant Wiskeman as he was handcuffed and not pulling away from Defendant Wiskeman.

36.     At no point did Mr. Miller posture his body in a threatening manner as he was handcuffed with his hands behind his back.

37.     At no point did Mr. Miller strike Defendant Wiskeman or any other officer in any other way.

38.     Defendant Wiskeman told Mr. Miller to remain on the ground.

39.     Mr. Miller complied with the instruction to remain on the ground.

40.     Mr. Miller asked Defendant Wiskeman about the location of his body camera with the hope his brutal assault was captured on video.

41.     Defendant Wiskeman told Mr. Miller to "shut the fuck up," and kicked Mr. Miller in the gut area.

42.     At no point prior to Defendant Wiskeman kicking Mr. Miller did Mr. Miller attempt to flee or take steps away from Defendant Wiskeman.

43.    At no point prior to Defendant Wiskeman kicking Mr. Miller did Miller resist Defendant Wiskeman, as he had simply asked a question and was still handcuffed on the ground.

44.    At no point did Mr. Miller posture his body in a threatening manner as he was handcuffed on the ground with his hands behind his back complying with the order to stay on the ground.

45.    At no point did Mr. Miller strike Defendant Wiskeman or any other officer in any other way.

46.    Defendant Wiskeman eventually walked Mr. Miller to a state trooper vehicle.

47.    Defendant Wiskeman slammed Mr. Miller's entire body up against the state trooper vehicle.

48.    At no point prior to Defendant Wiskeman slamming Mr. Miller against the state trooper vehicle did Mr. Miller attempt to flee or take steps away from Defendant Wiskeman.

49.    At no point prior to Defendant Wiskeman slamming Mr. Miller against the state trooper vehicle did Mr. Miller resist Defendant Wiskeman, as he complied with Defendant Wiskeman in walking to the vehicle.

50.    At no point did Mr. Miller posture his body in a threatening manner.

51.    At no point did Mr. Miller strike Defendant Wiskeman or any other officer in any other way.

52.    Defendant Wiskeman shoved Mr. Miller into the state trooper vehicle.

53.    Mr. Miller was covered in blood, with blood dripping from his forehead, mouth, and neck as a result of the beating he just endured by the three Defendants.

54.    Defendant Wiskeman called paramedics to meet him at the state police barracks so they could evaluate Mr. Miller's injuries.

55.    Defendant Wiskeman drove Mr. Miller to the state police barracks and handcuffed him to a bench.

56.    Upon seeing Mr. Miller's condition, a paramedic advised Defendant Wiskeman to immediately take Mr. Miller to the nearest emergency room and asked why Defendant Wiskeman did not call emergency personnel to the scene.

57.    Mr. Miller began to lose consciousness during the ride from the state police barracks to Westmoreland Hospital.

58.    A paramedic told Mr. Miller that he was being transferred to a trauma unit at Forbes Hospital.

59.    As a result of the excessive uses of force by each of the Defendants described above, Mr. Miller suffered physical injury, pain, and suffering with injuries including a severed spleen, collapsed lung, missing teeth, and multiple rib fractures.

60.    Mr. Miller spent seven days in the hospital.

61.    As a result of the excessive uses of force by each of the Defendants, Mr. Miller was diagnosed with PTSD.

62.    Defendant Wiskeman, Kelly, and Goga were at all times acting under the color of law.

## IV.
## CAUSES OF ACTION

**Count One**

**Excessive Force**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendant Wiskeman**

63.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

64.    Acting under the color of law, Defendant Wiskeman deprived Mr. Miller of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

65.    Mr. Miller brings this cause of action pursuant to 42 U.S.C. § 1983.

66.    The amount of force used by Defendant Wiskeman against Mr. Miller as described above, specifically but not limited to, when Defendant Wiskeman tackled Mr. Miller on the floor, punched him in the head, swept his legs from underneath him causing him to fall to the floor, kicked him, and slammed him up against a patrol vehicle was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

67.    An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989).

68.    When a police officer uses force to effectuate an arrest that force must be objectively reasonable. *Id.* at 1871.

69.    The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at

issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

70.     Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Couden v. Duffy,* 446 F.3d 483, 496–97 (3d Cir.2006).

71.     In *Couden,* the Third Circuit concluded that officers used excessive force when they jumped on a 14–year–old burglary suspect, put a knee in his back, pointed guns at his head, handcuffed him, and sprayed him with mace. *Id.* at 497.

72.     The Court emphasized that these actions were unreasonable because the suspect was cooperative and there was no reason to believe that he was armed or had any accomplices. Moreover, there were four other officers available to subdue him if he became violent. *Id.*

73.     Third Circuit case law also stresses that force is not to be continually applied to a compliant, non-threatening person. *Ansell v. Ross Twp.*, 419 F. App'x 209, 213 (3d Cir.2011) (finding that excessive force was adequately alleged where the plaintiff was "sleeping, alone, unarmed, and cooperative" and deputy sheriffs dragged him from his bed, pointed guns at him, threatened to shoot him, and slammed him against a wall).

74.     Additionally, the Third Circuit has held that force was excessive where the plaintiff "did not resist [the police officer] in any way, was unarmed, and had committed, if anything, a relatively minor offense, yet [the officer] tackled him, face-first, onto the ground, twisting his neck on the way down." *Pratt v. Port Authority of New York and New Jersey,* 563 F. App'x 132, 135 (3d Cir. 2014).

75.    In *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144–45 (3d Cir.1984), the Court held that there does not have to be "precise factual correspondence" between the case at issue and a previous case in order for a right to be "clearly established," and we would not be "faithful to the purposes of immunity by permitting ... officials one liability-free violation of a constitutional or statutory requirement." *See also Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.")

76.    A public official does not get the benefit of "one liability-free violation" simply because the circumstance of his case is not identical to that of a prior case. *People of Three Mile Island*, 747 F.2d at 145).

77.    In some exceptional cases the "violation [is] obvious" such that general statements of law may suffice to show that a right is "clearly established," even in the absence of factually analogous precedent. *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

78.    In the excessive force context, an "obvious" case is one where the general statements of law articulated in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) provide the requisite notice. *Brosseau,* 543 U.S. at 198-99, 125 S.Ct. 596.

## SEVERITY OF THE CRIME AT ISSUE

79.    The application of the force did not occur in the context of a suspected criminal action, instead Defendant Wiskeman tackled Mr. Miller on the bedroom floor as Mr. Miller was in the process of opening the bedroom door to investigate what was going on as he heard his friend Mr. Vogel screaming and the commotion caused when the Defendants did not identify themselves as law enforcement officers when they stormed into the residence.

11

80.     Like in, *Pratt v. Port Authority of New York and New Jersey,* Defendant

Wiskeman's force was excessive as Mr. Miller "did not resist [the police officer] in any way, was

unarmed, and yet [the officer] tackled him, face-first, onto the ground. 563 F. App'x 132, 135 (3d

Cir. 2014); see also *Ansell*, 419 F. App'x 209, 213 (3d Cir.2011) (finding that excessive force was

adequately alleged where the plaintiff was "sleeping, alone, unarmed, and cooperative" and deputy

sheriffs dragged him from his bed, pointed guns at him, threatened to shoot him, and slammed him

against a wall).

81.     The use of force is even less justified in this case as Mr. Miller had committed no

offense at the time of the Defendant Wiskeman's use of force. *Id*.

82.     Given that there was no underlying suspected crime in this case and given that Mr.

Miller still did not commit a crime when Defendant Wiskeman punched him in the head this factor

weighs against any continuous use of force. *Keller v. Crawford*, 465 F. Supp. 3d 472, 479 (E.D.

Pa. 2020); see also *Anthony v. Seltzer*, 696 F. App'x 79, 82-83 (3d Cir. 2017) (noting the existence

of pre-2013 precedent in support of the "long-established Fourth Amendment law, [that] force may

not legitimately be used against an individual who is compliant and poses no ongoing threat to

himself or others, or who is not resisting arrest, even if he was initially non-compliant.")

83.     Given that there was no underlying suspected crime in this case and given that Mr.

Miller still did not commit a crime when Defendant Wiskeman kicked Miller, this factor weighs

against any continuous use of force. *Id.*

84.     Given that there was no underlying suspected crime in this case and given that Mr.

Miller still did not commit a crime when Defendant Wiskeman swept his legs out from beneath

him causing him to fall to the ground, this factor weighs against any continuous use of force. *Id.*

85.     Given that there was no underlying suspected crime in this case and given that Mr. Miller still did not commit a crime in Defendants' presence when Defendant Wiskeman slammed Miller up against a patrol vehicle, this factor weighs against any continuous use of force. *Id.*

## WHETHER MR. MILLER POSED AN IMMEDIATE THREAT

86.     Mr. Miller was not threatening any officer or other person immediately prior to and at the time when Defendant Wiskeman slammed Mr. Miller on the bedroom floor as Mr. Miller was in the process of opening the bedroom door to investigate what was going on as he heard his friend Mr. Vogel screaming and the commotion caused when the Defendants did not identify themselves as law enforcement officers when they stormed into the residence.

87.     Mr. Miller was not threatening any officer or other person immediately prior to and at the time when Defendant Wiskeman punched him in the head as he was handcuffed in a defenseless position on the ground, did not posture his body in a threatening manner, and did not strike Defendant Wiskeman or any other person.

88.     Mr. Miller was not threatening any officer or other person immediately prior to and at the time when Defendant Wiskeman swept his legs from beneath him causing him to fall to the floor, as he was handcuffed in a defenseless position being dragged from the bedroom area to the kitchen area by Defendant Wiskeman, did not posture his body in a threatening manner, and did not strike Defendant Wiskeman or any other person.

89.     Mr. Miller was not threatening any officer or other person immediately prior to and at the time when Defendant Wiskeman kicked him as he was complying with the instruction to remain on the ground, did not strike Defendant Wiskeman or any other person, did not posture his body in a threatening manner, and had simply asked Defendant Wiskeman about the location of his body camera hoping his brutal assault was captured on video.

90.    Mr. Miller was not threatening any officer or other person immediately prior to and at the time when Defendant Wiskeman slammed him up against the patrol vehicle as he was in a defenseless position, handcuffed and subdued, did not posture his body in a threatening manner, and did not strike Defendant Wiskeman or any other person.

91.    Accordingly, this factor weighs against any continuous use of force. *Id*.

## WHETHER MR. MILLER WAS ACTIVELY RESISTING ARREST OR EVADING ARREST BY FLIGHT

92.    Mr. Miller was not attempting to evade arrest nor resist arrest at the time Defendant Wiskeman slammed Mr. Miller on the bedroom floor as Mr. Miller was in the process of opening the bedroom door to investigate what was going on as he heard his friend Mr. Vogel screaming and the commotion caused when the Defendants did not identify themselves as law enforcement officers when they stormed into the residence.

93.    Mr. Miller was not attempting to evade nor resist arrest at the time Defendant Wiskeman punched him in the head as he was handcuffed in a defenseless position on the ground when Defendant Wiskeman punched him in the head and did not attempt to flee or take steps away from Defendant Wiskeman.

94.    Mr. Miller was not attempting to evade nor resist arrest at the time when Defendant Wiskeman leg swept as he was handcuffed in a defenseless position being dragged from the bedroom area to the kitchen area by Defendant Wiskeman and did not attempt to flee or take steps away from Wiskeman.

95.    Mr. Miller was not attempting to evade nor resist arrest at the time when Defendant Wiskeman kicked him as he was complying with the instruction to remain on the ground and simply asked Defendant Wiskeman about the location of his body camera hoping his brutal assault

was captured on video an at the time he complied with instructions to remain on the ground he did not attempt to flee or take steps away from Defendant Wiskeman.

96.     Mr. Miller was not attempting to evade nor resist arrest at the time when Defendant Wiskeman slammed him up against a patrol vehicle as he was handcuffed, restrained, and subdued in a defenseless position and did not attempt to flee or take steps away from Defendant Wiskeman.

97.     Accordingly, this factor weighs against any continuous use of force. *Id.*

98.     Like in *Couden*, Defendant Wiskeman's actions were unreasonable as Mr. Miller was cooperative, there was no reason to believe he was armed, or had accomplices, and he was outnumbered three to one if he became violent: at no point did he become violent during the brutal use of force against him. *Couden*, 446 F.3d at 497.

99.     This is also an "obvious" case where the general statements of law articulated in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) provide the requisite notice as Mr. Miller was not suspected of a crime, did not pose a threat, was not resisting, and was not evading arrest.

100.    A reasonable officer would know that the use of force is <u>clearly unreasonable and excessive</u> when engaging with citizens such as Mr. Miller, who was not threatening any officer or other person, was not attempting to evade or resist arrest at the time the force was used, and who the use of force was not warranted, because Mr. Miller was not suspected of a crime, was not evading, was not fleeing, and was defenseless during the course of the use of force committed against him.

101.    As a direct result of the force used against him by Defendant Wiskeman, Mr. Miller has suffered physical injury, pain, and mental anguish for which he sues herein.

102.    These injuries were not caused by any other means.

**Count Two**

**Excessive Force**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendant Kelly**

103.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

104.    Acting under the color of law, Defendant Kelly deprived Mr. Miller of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

105.    Mr. Miller brings this cause of action pursuant to 42 U.S.C. § 1983.

106.    The amount of force used by Defendant Kelly against Mr. Miller as described above, specifically but not limited to, when Defendant Kelly stomped on Mr. Miller was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

107.    An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. *Graham*, 490 U.S. at 396.

108.    When a police officer uses force to effectuate an arrest that force must be reasonable. *Id.*

109.    The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

16

## SEVERITY OF THE CRIME AT ISSUE

110.    In *Green v. New Jersey State Police*, 246 Fed.Appx. 158, 161 (3d Cir. 2007), the Court held that a reasonable jury could find excessive force where officer choked plaintiff, hit him in the head with a flashlight, and <u>kicked him while on the ground,</u> when plaintiff was arrested for a "non-violent offense" of drunk driving.

111.    The application of the force did not occur in the context of a suspected criminal action when Defendant Kelly stomped on Mr. Miller on the bedroom floor.

112.    Given that there was no underlying suspected crime in this case and given that Mr. Miller still did not commit a crime when Defendant Kelly stomped on Mr. Miller, this factor weighs against any continuous use of force. *Keller*, 465 F. Supp. 3d 472, 479 (E.D. Pa. 2020).

## WHETHER MR. MILLER POSED AN IMMEDIATE THREAT

113.    Mr. Miller was not threatening any officer or other person immediately prior to and at the time when Defendant Kelly stomped on Mr. Miller as he was handcuffed in a defenseless position on the ground, did not posture his body in a threatening manner, and did not strike Defendant Kelly or any other person when Defendant Kelly stomped on him.

114.    Accordingly, this factor weights against any continuous use of force.

## WHETHER MR. MILLER WAS ACTIVELY RESISTING ARREST OR EVADING ARREST BY FLIGHT

115.    Mr. Miller was not attempting to evade nor resist arrest at the time Defendant Kelly stomped on Mr. Miller as he was handcuffed in a defenseless position on the ground when Defendant Kelly stomped on him and did not attempt to flee or take steps away from Defendant Kelly.

116.    Accordingly, this factor weights against any continuous use of force.

117.    Like in *Couden*, Defendant Kelly's actions were unreasonable as Mr. Miller was cooperative, there was no reason to believe he was armed, or had accomplices, and he was outnumbered three to one if he became violent: at no point did he become violent during the brutal use of force against him. 446 F.3d at 497.

118.    This is also an "obvious" case where the general statements of law articulated in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) provide the requisite notice as Mr. Miller was not suspected of a crime, did not pose a threat, was not resisting, and was not evading arrest.

119.    A reasonable officer would know that the use of force is <u>clearly unreasonable and excessive</u> when engaging with citizens such as Mr. Miller, who was not threatening any officer or other person, was not attempting to evade or resist arrest at the time the force was used, and who the use of force was not warranted, because Mr. Miller was handcuffed in a defenseless position on the ground at the time Defendant Kelly stomped on him.

120.    As a direct result of the force used against him by Defendant Kelly, Mr. Miller has suffered physical injury and pain, and mental anguish for which he sues herein.

121.    These injuries were not caused by any other means.

### Count Three

**Excessive Force**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendant Goga**

122.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

123.    Acting under the color of law, Defendant Goga deprived Mr. Miller of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by

other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

124.    Mr. Miller brings this cause of action pursuant to 42 U.S.C. § 1983.

125.    The amount of force used by Defendant Goga against Mr. Miller as described above, specifically but not limited to, when Defendant Goga stomped on Mr. Miller was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

126.    An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person. *Graham*, 490 U.S. at 396.

127.    When a police officer uses force to effectuate an arrest that force must be reasonable. *Id.*

128.    The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

129.    In *Green v. New Jersey State Police*, 246 Fed.Appx. 158, 161 (3d Cir. 2007) the Court held that a reasonable jury could find excessive force where officer choked plaintiff, hit him in the head with a flashlight, and <u>kicked him while on the ground,</u> when plaintiff was arrested for a "non-violent offense" of drunk driving.

## SEVERITY OF THE CRIME AT ISSUE

130.    The application of force did not occur in the context of a suspected criminal action when Defendant Goga stomped on Mr. Miller on the bedroom floor.

131.    Given that there was no underlying suspected crime in this case and given that Mr. Miller and still did not commit a crime when Defendant Goga stomped on Mr. Miller this factor weighs against any continuous use of force. *Keller*, 465 F. Supp. 3d 472, 479 (E.D. Pa. 2020); see also *Anthony v. Seltzer*, 696 F. App'x 79, 82-83 (3d Cir. 2017) (noting the existence of pre-2013 precedent in support of the "long-established Fourth Amendment law, [that] force may not legitimately be used against an individual who is compliant and poses no ongoing threat to himself or others, or who is not resisting arrest, even if he was initially non-compliant."

132.    Given that there was no underlying suspected crime in this case and given that Mr. Miller still did not commit a crime when Defendant Wiskeman punched him in the head this factor weighs against any continuous use of force. *Keller v. Crawford*, 465 F. Supp. 3d 472, 479 (E.D. Pa. 2020); see also *Anthony v. Seltzer*, 696 F. App'x 79, 82-83 (3d Cir. 2017) (noting the existence of pre-2013 precedent in support of the "long-established Fourth Amendment law, [that] force may not legitimately be used against an individual who is compliant and poses no ongoing threat to himself or others, or who is not resisting arrest, even if he was initially non-compliant."

### WHETHER MR. MILLER POSED AN IMMEDIATE THREAT

133.    Mr. Miller was not threatening any officer or other person immediately prior to and at the time when Defendant Goga stomped on Mr. Miller as he was handcuffed in a defenseless position on the ground, did not posture his body in a threatening manner, and did not strike Defendant Goga or any other person when Defendant Goga stomped on him.

134.    Accordingly, this factor weights against any continuous use of force.

### WHETHER MR. MILLER WAS ACTIVELY RESISTING ARREST OR EVADING ARREST BY FLIGHT

135.    Mr. Miller was not attempting to evade nor resist arrest at the time Defendant Goga stomped on Mr. Miller as he was handcuffed in a defenseless position on the ground when

20

Defendant Goga stomped on him and did not attempt to flee or take steps away from Defendant Goga.

136.    Accordingly, this factor weights against any continuous use of force.

137.    Like in *Couden*, Defendant Goga's actions were unreasonable as Mr. Miller was cooperative, there was no reason to believe he was armed, or had accomplices, and he was outnumbered three to one if he became violent: at no point did he become violent during the brutal use of force against him. 446 F.3d at 497.

138.    This is also an "obvious" case where the general statements of law articulated in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) provide the requisite notice as Mr. Miller was not suspected of a crime, did not pose a threat, was not resisting, and was not evading arrest.

139.    A reasonable officer would know that the use of force is <u>clearly unreasonable and excessive</u> when engaging with citizens such as Mr. Miller, who was not threatening any officer or other person, was not attempting to evade or resist arrest at the time the force was used, and who the use of force was not warranted, because Mr. Miller was handcuffed in a defenseless position on the ground at the time Defendant Goga stomped on him.

140.    As a direct result of the force used against him by Defendant Goga, Mr. Miller has suffered physical injury, pain and mental anguish for which he sues herein.

141.    These injuries were not caused by any other means.

**V.**
**<u>PUNITIVE DAMAGES</u>**

152.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

153.    When viewed objectively from the standpoint of Defendants Wiskeman, Kelly, and Goga, each of the Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

154.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendants Wiskeman, Kelly, and Goga which was recklessly or callously indifferent to Mr. Miller's federally protected rights, Mr. Miller is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

155.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

156.    Plaintiff's injuries were a foreseeable event, which were directly and proximately caused by Defendants Wiskeman, Kelly, and Goga's use of excessive and unreasonable force against Plaintiff. As a result, Plaintiff is entitled to recover all actual damages allowed by law. The Defendants conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages against Defendants Wiskeman, Kelly, and Goga.

157.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

a.    Physical injuries;
b.    Physical pain and suffering;
c.    Mental anguish;
d.    Permanent physical disfigurement; and
e.    Medical Expenses.

158.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and requests the award of punitive damages against Defendants, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

159.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## VIII.
## JURY REQUEST

160.    Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

*/s/ Breanta Boss*
BREANTA BOSS,
Texas Bar No. 24115768

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
breanta@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF